Gary N. Marks
Robert L. Schmidt
NORRIS, McLAUGHLIN & MARCUS, PA
721 Route 202-206
P.O. Box 1018
Somerville, NJ  08876-1018
(908) 722-0700
Proposed Attorneys for Debtors/Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>JESAL PATWARI, et al,<br><br>        Debtors. | Chapter 11<br><br>Case Nos.:  08-26178, 08-26181, 08-26184, 08-26186 and 08-26188 (NLW)<br><br>Judge:  Novalyn L. Winfield |
| JESAL PATWARI f/k/a/ JESAL DESAI, SHAPAT, INC., PATWARI, LLC, SHAPAT 2, LLC and SHAPAT 3, LLC,<br><br>        Plaintiffs,<br>v.<br><br>DOCTORS ASSOCIATES, INC, SUBWAY REAL ESTATE CORP, and REINHART FOODSERVICES,<br><br>        Defendants. | Adv. No.:  08-        (NLW) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT
## TO 11 U.S.C. § 362(a) and §105(a)

Plaintiff-Debtors Jesal Desai, Shapat, Inc., Shapat II, LLC, Shapat III, LLC and Patwari,

LLC (herein collectively "Plaintiffs" or "Debtors"), by and through their counsel Norris

McLaughlin & Marcus, PA, by way of Complaint seeking injunctive relief against (1) Doctors

Associates, Inc., (2) Subway Real Estate Corporation, and (3) Reinhart Food Service, pursuant to

11 U.S.C. § 362(a)(1), § 362(a)(2), § 362(a)(3) and § 105 (a), respectfully represent:

## Jurisdiction and Venue

1.      This is an adversary proceeding in the above-captioned chapter 11 case brought

by the Debtors pursuant to 11 U.S.C. § 362(a)(1), § 362(a)(2), § 362(a)(3), and § 105(a) to

invoke and enforce the provisions of the automatic stay in this case, specifically to declare that

the defendants are enjoined from putting the Debtors' four Subway sandwich stores out of

business so that these assets, valuable only as a going concern, maintain their value for the

benefit of the Debtors and their respective creditors.  Specifically, Debtors seek:

> A.      To invoke and enforce the automatic stay and/or enjoin defendant Doctor's
>
> Associates Inc. ("DAI"), the international franchisor of the Subway brand of
>
> sandwich restaurants, from enforcing a Preliminary Injunction enjoining the
>
> Debtors from continuing to use Subway trademarks and materials and from
>
> operating as authorized Subway sandwich restaurants, which injunction was
>
> entered on August 12, 2008 in an action in the United States District Court,
>
> District of New Jersey, captioned <u>Doctor's Associates Inc. v. Jesal Desai a/k/a</u>
>
> <u>Jesal A. Patwari, Shapat, Inc., Shapat II, LLC, Shapat III, LLC, and Patwari,</u>
>
> <u>LLC,</u> Civil No. 08-3363;
>
> B.      To invoke and enforce the automatic stay and/or enjoin defendants DAI and
>
> Subway Real Estate Corp, from seeking to evict, eject, dispossess, or
>
> otherwise remove the Debtors' four Subway restaurants;
>
> C.      To invoke and enforce the automatic stay and/or enjoin defendants DAI and
>
> Subway Real Estate Corp., and their employees and agents, from stopping,

2

restricting, or interfering with the supply of food and supplies to the Debtors'

Subway sandwich restaurants; and

    D.    To invoke and enforce that automatic stay and/or enjoin defendant Reinhart

Food Service from failing or refusing to supply food and supplies to the

Debtors' Subway restaurants.

2.    The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334 &

157(b)(2).

3.    This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A) and (O).

4.    Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409 (a).

## The Parties

5.    Debtor Jesal Desai ("Desai"), married name Jesal Patwari, is an individual

residing in Edison, New Jersey. Ms. Desai is a "Subway" sandwich restaurant franchisee

pursuant to four franchise agreements with defendant DAI, and is the owner of four Subway

sandwich restaurants located in Bloomfield, Guttenberg, and Montclair New Jersey.

6.    Debtors Shapat, Inc. (a New Jersey Corporation), Patwari, LLC (a New Jersey

Limited Liability Company), Shapat 2, LLC (a New Jersey Limited Liability Company), and

Shapat 3, LLC (a New Jersey Limited Liability Corporations) (collectively "The Operating

Companies") are corporate and trade names under which Patwari operates her four Subway

sandwich restaurants.

7.    Defendant Doctor's Associates, Inc. ("DAI") is a Florida corporation in the

business of franchising Subway Restaurants and the licensor of Subway trademarks. DAI has

over 29,000 franchises in over 86 countries. It maintains its principal place of business at 325

Bic Drive, Milford, CT 06461.

3

8.      Defendant Subway Real Estate Corp. ("SREC"), a Delaware Corporation, is an affiliate of DAI in the business of leasing commercial premises for use as Subway sandwich restaurants.  SREC is the master tenant, and Desai the subtenant, at the four properties occupied by Desai's Subway sandwich restaurants.

9.      Defendant Reinhart Food Service ("Reinhart") located at 100 Industrial Park Road, Coal Township, Pennsylvania, is the vendor authorized by DAI to supply all the food and paper products to the Debtor's stores, other than certain bottled soft drinks.

## INTRODUCTION AND FACTS COMMON TO ALL COUNTS

**A.      The Subway Restaurant Franchises:**

10.      Debtor Desai is the licensed franchisee of four Subway sandwich stores in New Jersey pursuant to four separate franchise agreements between Desai and defendant DAI.

11.      As described below, Desai's initial investment in the four stores was approximately $740,000, most of which was borrowed from various financial institutions and individuals.  To continue operations, she obtained additional loans in the amount of approximately $180,000.  Her total investment is over $920,000, including a home equity loan of approximately $128,000.

12.      The four stores have had record breaking sales in recent months, as acknowledged by DAI in several letters to the Debtors.  DAI specifically wrote, "We hope the great sales trend and momentum continues.  Franchisee profitability is the cornerstone of our 2010 Strategic Plan. Together with our partners in the field we continue to work on finding new and improved ways to help you build your business."

13.      The Debtors achieved this success despite numerous obstacles interposed by DAI and after several periods of significant financial hardship on the Debtors.

4

### (1) Subway store number 27800 at 49 Claremont Avenue, Montclair, NJ

14.    In or about June 2002, Desai and DAI entered into Franchise Agreement No. 27800, pursuant to which Desai opened Subway store no. 27800 in approximately April 2003.

15.    In accordance with the Franchise Agreement, DAI and Subway Real Estate Corp., DAI's affiliate, handled the site selection evaluation and approvals for the store location, negotiated the real estate lease with the property owner, and sublet the premises to Desai. Subway Real Estate Corp. entered into a lease agreement dated November 7, 2002, for premises at 49 Claremont Avenue, Montclair New Jersey, and by sublease dated January 3, 2003 sublet the premises to Desai.

16.    This was a new location for a Subway restaurant. Desai invested approximately $190,000 to construct and open store 27800. To finance this store, Desai obtained a loan in the approximate amount of $170,000 from Subhash Shah and signed a promissory note.

17.    The space leased is approximately 1800 square feet. The initial rent for the premises was approximately $3,700.00 per month. The current rent for these business premises is approximately $4,560.00 per month. The annual rent per square foot for this location in about $28.50. Rent payments are made directly to the master landlord, not to SREC.

### (2) Subway store number 29895 at 6901 Bergenline Avenue, Guttenberg, NJ

18.    In or about November 2002, Desai and DAI entered into Franchise Agreement No. 29895, pursuant to which Desai opened Subway store no. 29895 in approximately January 2004.

19.    In accordance with the Franchise Agreement, DAI and Subway Real Estate Corp., handled the site selection evaluation and approvals for a store location, negotiated the real estate lease with the property owner, and sublet the premises to Desai. Subway Real Estate Corp.

entered into a lease agreement dated August 30, 2003 for premises at 6901 Bergenline Avenue, Guttenberg, New Jersey and by sublease dated October 13, 2003 sublet the premises to Desai.

20.     Desai invested approximately $185,000 to acquire this franchise.  This was a new Subway location and constructed by Desai at her own expense.  Desai obtained financing for this venture in the amount of approximately $120,000 from the United Trust Bank (now PNC Bank).

21.     The leased space for the business is approximately 1500 square feet.  The monthly rent currently for this space is approximately $5,600.   The annual rent for this space is approximately $41.60 per square foot.  Rent payments are made directly to the master landlord, not to SREC.

### (3) Subway store number 15953 at 595 Bloomfield Avenue, Bloomfield

22.     In or about January 2006, Desai signed transfer documents for the transfer of an existing Subway restaurant at 595 Bloomfield Avenue, Bloomfield, to her.  In May 2006, Desai and DAI entered into Franchise Agreement No. 15953, for that Subway sandwich restaurant.

23.     Since this was an existing Subway location, Subway Real Estate Corp. already had a lease agreement with the property owner and a sublease with the prior franchisee.  By Assignment of Sublease dated May 3, 2006, Desai assumed the sublease with Subway Real Estate Corp.

24.     Desai was required to remodel and renovate this location at a cost of approximately $165,000.   Desai obtained loans of approximately $165,000 to finance this venture including $100,000 from Commerce Bank, $25,000 from IFC Corporation for equipment financing, and a personal loan in the amount of $40,000.

25.    The current space leased for this location is approximately 1200 square feet.  The current rent is approximately $2,400 per month.  Rent payments are made directly to the master landlord, not to SREC.

### (4) Subway store number 40217 at 135 Bloomfield Avenue, Bloomfield,

26.    In or about May 2006, Desai and DAI entered into Franchise Agreement No. 40217.

27.    In accordance with the Franchise Agreement, DAI and Subway Real Estate Corp. handled the site selection evaluation and approvals for a store location, negotiated the real estate lease with the property owner, and sublet the premises to Desai.  Subway Real Estate Corp. entered into a lease agreement dated June 27, 2006 for premises at 135 Bloomfield Avenue, Bloomfield, New Jersey and by sublease dated July 20, 2006 sublet the premises to Desai.

28.    This was a new location for a Subway restaurant.  Desai expended approximately $200,000 to construct and open the store.  She obtained a loan of approximately $123,000 from GE Capital.

29.    The leased space for the business is approximately 2,000 square feet.  The monthly rent currently for this space is approximately $4,500.  Rent payments are made directly to the master landlord, not to SREC.

### B.    The Defendants' Attempts to Terminate the Debtors' Franchises,

30.    Under the terms of the Franchise Agreements, Subway franchisees must pay DAI a royalty of 8% of the gross sales for each restaurant.  DAI also collects an additional 4.5% of the gross sales for the Subway Advertising Trust Fund ("advertising fees").

31.    DAI has sent Desai Notices of Default alleging Desai had failed to pay royalties and/or advertising fees which notices were erroneous because the amounts claimed were not due.

In other instances, Desai cured the purported default. Nonetheless, on the basis of those notices, DAI has sought to terminate Desai's franchises and enjoin Debtors' operations of the four Subway restaurants.

32.     By notice dated November 17, 2006, DAI claimed that for store 15953 (Bloomfield I) Desai owed an additional $961.42 in royalty payments and $826.24 in advertising fees, and that her franchise was terminated unless the default was cured within ten days. Desai disputed DAI's claim, and on or about January 9, 2007 DAI acknowledged its error and reversed the charges. Nonetheless, DAI relied upon this notice to seek the termination of Desai's franchise for store 15953 and to seek an injunction against the Debtors for operating this store.

33.     By notice dated November 24, 2006, DAI claimed Desai owed an additional $1,215.07 in royalty payments and $560.99 in advertising fees for store 29895 (Guttenberg) and that her franchise was terminated unless the default was cured within ten days. The alleged arrears were paid by December 5, 2006, i.e. less that 10 days from the notice. Nonetheless, DAI relied upon this notice to seek the termination of Desai's franchise for store 29895 and to seek an injunction against the Debtors for operating this store.

34.     On or about February 26, 2007, DAI served another Notice of Default on Desai, this time claiming she owed an additional $2,314.99 in advertising fees for store 27800 (Montclair) and that her franchise was terminated unless the default was cured within ten days. Desai disputed DAI's claim. The claim was due to DAI's error, as evidenced by subsequent credits by DAI. Nonetheless, DAI relied upon this notice to seek the termination of Desai's franchise for store 27800 and to seek an injunction against the Debtors for operating this store.

35.     On or about April 5, 2007, DAI served another Notice of Default on Desai, this time claiming she owed an additional $2,271.94 in advertising fees for store 40217 (Bloomfield

II.) Desai disputed these amounts, the issue was not resolved before litigation commenced

between the parties, and DAI has withheld discovery necessary to investigate DAI's basis for

these charges.

36.    By letter dated July 12, 2007 from the law firm Gray Plant Mooty Mooty &

Bennet ("GPMMB"), DAI notified Desai that it had conducted an "audit" of stores 27800 and

29895, and that based upon these audits DAI had determined that it was owed an additional

$42,546.05, including costs of the audit and attorneys fees.

37.    Specifically, for store 27800, DAI claimed Desai now owed an additional

$12,615.35 in royalties and $7,096.14 in advertising fees for a total of $19,711.49 in unpaid fees.

DAI also added charges of $4,250 for purported audit, accounting, and investigation fees plus

$1,303.59 in interest.

38.    For store 29895, DAI claimed Desai now owed an additional $7,822.49 in

royalties and $4,400.15 in advertising fees, for a total of 12,222.64 in unpaid fees.  DAI also

added charges of $4,250 for purported audit, accounting, and investigation fees plus $808.33 in

interest.

39.    Debtors dispute that the amounts alleged in the July 12, 2007 letter are owed

because the audit was based upon inaccurate and incomplete sales information.  After receiving

the July 12, 2007 letter, Desai spoke with Tracy Castillo at GPMMB and advised that she wished

to dispute the audit's calculations.  A teleconference was scheduled for August 17, 2007 with

attorneys from GPMMB and a representative of DAI so that Desai could explain why the audit

figures were incorrect.

40.    Before the teleconference could occur, a dispute arose between DAI and Desai

over three checks Desai tendered to pay certain royalties.  DAI required payments to be made by

cashiers check or certified check.  Although PNC bank did not ordinarily issue certified checks,

they agreed to do so in this instance because the branch did not have any cashiers checks

"blanks."  Desai deposited sufficient funds for the checks.  However, when DAI negotiated the

checks, two of them were not honored by PNC Bank.  DAI accused Debtors of attempting to

commit fraud, which claim Debtors deny.  DAI, through its attorney, advised that it no longer

wanted Debtors operating any Subway stores.  On August 17, 2007, when Desai called in to the

scheduled teleconference to discuss how the parties would resolve the audit dispute, no one from

GPMMB or DAI got on the line to participate in the teleconference.

41.    By letters from Forrest Scott Turkish, Esq. (counsel for DAI and Subway Real

Estate Corp.), dated August 24, 2007, August 29, 2007, August 30, 2007, and August 31, 2007,

DAI and Subway Real Estate Corp. notified Debtors that the franchise agreements and sublease

agreements were terminated.

42.    DAI and Reinhart continued to supply the Debtors with the food, paper goods,

and other materials necessary to operate the franchises, even after the letters sent by Mr. Turkish

in August 2007.

43.    The Debtors continued paying Reinhart for the food and other supplies delivered

to the stores.  However, DAI has refused royalty and advertising fund payments from Debtors in

order to inflate the amounts owed and purportedly unpaid by the Debtors.  Specifically, DAI uses

an automatic payment deduction system to withdraw royalties and fees directly from franchisee

accounts.  Each time the Debtors changed banking institutions, the Debtors notified DAI and

provided DAI with the completed authorization forms so that DAI could make the withdrawals.

DAI has acknowledged in writing that the pre-authorized accounts were set up.  However, DAI

has refused to withdraw the royalty payments and advertising fees from the accounts.  A DAI

10

representative informed the Debtors that DAI is not pulling the funds out of the account because they terminated the franchises.

**C.    The Arbitration**

44.    In March 2007, DAI filed for arbitration before the American Dispute Resolution Center in Bridgeport, Connecticut, seeking an arbitration award terminating Desai's franchise for store 15953. DAI did not initially pursue this arbitration, however in June 2007, DAI amended its arbitration demand to seek termination of all four of Desai's franchise agreements.

45.    Desai objected to the arbitration proceeding on a number of grounds, did not waive her objections, and ultimately did not participate in the arbitration proceedings.

46.    DAI proceeded with pursuing the arbitrations in Desai's absence. DAI obtained arbitration awards dated September 6, 2007 which stated that (a) Desai's franchise agreements are terminated, (b) that Desai must cease using all Subway trademarks, trade names, service marks, colors, and signs and otherwise "disidentify" her stores, and (c) awarding various other relief.

**D.    The New Jersey Chancery Division Preliminary Injunction Enjoining DAI And Ordering That DAI Maintain the Status Quo Pending Final Decision**

47.    The sublease agreements between Subway Real Estate Corp. and the Debtors contain a clause that the subleases are terminated if the franchise agreements are terminated. In September 2007, after obtaining the default arbitration awards, Subway Real Estate Corp. filed four eviction complaints against Desai in New Jersey Superior Court, Landlord Tenant Division, seeking to dispossess Desai as its subtenant at the four business locations.

48.    On October 15, 2007, Desai filed an Order to Show Cause and Verified Complaint in the Chancery Division of the Superior Court of New Jersey, in a case captioned

11

Jesal Desai, Shapat, Inc., Shapat 2, LLC, Shapat 3, LLC, and Patwari, LLC v. Doctors

Associates, Inc. and Subway Real Estate Corp., docket no. ESX-C-314-07. (the "State Court

Action"). Although originally filed in Middlesex County, the case was transferred to Essex

County.

49.    In the State Court Action, Desai seeks judgment (a) that DAI and Subway Real

Estate Corp. violated the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1, *et seq.*, (b) for

reformation of the franchise agreements, (c) imposing a stay of Subway Real Estate Corp.'s

termination of Desai's subleases, and (d) other relief.

50.    DAI and Subway Real Estate Corp. counterclaimed in the State Court Action,

asserting claims for trademark infringement for Desai's continued operation of her Subway

sandwich restaurants and other claims, and seeking judgment (a) confirming the four arbitration

awards, (b) terminating the four franchise agreements, (c) enjoining Desai and the operating

companies from using DAI's trade names, trademarks, and other forms of advertising indicative

of Subway sandwich restaurants, and enjoining them from passing themselves off as operating an

authorized Subway restaurant, (d) awarding Subway Real Estate Corp. possession of the

properties sublet to Desai, and (e) other relief.

51.    On October 31, 2007, the Honorable Kenneth S. Levy, Presiding Judge, Chancery

Division, entered an Order to Show Cause ordering that defendant DAI and Subway Real Estate

Corp. show cause why they should not be preliminary enjoined from (a) enforcing the results of

the arbitration, (b) terminating Desai's four Subway franchises, and (c) terminating Desai's sub-

leases for its four Subway stores.

52.    At the hearing on October 31, 2007, both parties agreed to maintain the status quo

pending a hearing on a preliminary injunction.

53.     The issues were briefed extensively by the parties and hearings were held before Judge Levy on January 8, 2008 and February 1, 2008.

54.     On February 1, 2008, Judge Levy issued his decision on the record.  Judge Levy found that DAI's franchise agreements were contracts of adhesion, stating after a detailed review of the facts that "Clearly then the franchise agreements were contracts of adhesion." (Transcript of February 1, 2008 Decision (herein "Judge Levy Decision"), at page 18.)

55.     The Court further found that Desai had demonstrated a reasonable probability of success on the merits that the arbitration clauses, as drafted by DAI, were unconscionable, stating on the record, "I am convinced, as I said before, that we have a contract of adhesion containing numerous unconscionable provisions."  (Judge Levy Decision at page 25.)

56.     The Court expressly found that injunctive relief should be granted to preserve the status quo until final resolution of the issues in the case:

> Given the one-side nature of the agreement combined with the absolute lack of negotiation the Court concludes that plaintiff has demonstrated the likelihood of success on the merits of its claim that the franchise agreements were contracts of adhesion and that they were unconscionable.  Therefore, injunctive relief should be granted to preserve the status quo before the final resolution of the issues in this case with regard I guess ultimately to the enforceability of the arbitration award.

> (Judge Levy Decision at page 31) (emphasis added)

57.     The Court further found that Desai "has also demonstrated not only a probability of - - of a success on the merits but also irreparable harm if the Court does not enter this injunction," and that "in view of the . . . damage that most certainly will be caused to the plaintiff that the equities weigh clearly in favor of the injunctive relief and weigh in favor of the plaintiff..." (Judge Levy Decision at page 32) (emphasis added).

13

58.     The Court stated that injunctive relief should be ordered to preserve the status quo

pending further proceedings in the case.  As to the pending eviction cases, the Court stated that

because under the Court Rules he could not directly enjoin the Superior Court, Landlord Tenant

Part, he would instead enjoin DAI and Subway Real Estate Corp. from using the arbitration

awards (which purported to terminate the franchises) in the eviction proceedings, thus effectively

staying those cases.  (Judge Levy Decision at page 32-33.)

59.     On February 26, 2008, Judge Levy signed an written Order expressly stating DAI

and Subway Real Estate Corp. "are preliminarily enjoined from enforcing the four (4)

Arbitration Awards entered September 26, 2007 . . . to preserve the status quo and from using the

said Arbitration Awards as evidence in any pending proceeding between these parties until

further Order of this Court..."  (Order, February 26, 2008) (emphasis added).

60.     By preliminary enjoining the arbitration awards, the Court effectively enjoined

the termination of Desai's franchise agreements, and the Debtors were able to continue operating

the four Subway sandwich restaurants.

61.     After Judge Levy entered the injunction, DAI and Reinhart Food Services

continued supplying the Debtors' Subway stores with the food and other supplies ordered by the

Debtors.

62.     the Debtors were able to profitably operate the four Subway restaurants.  Even

DAI acknowledged their record breaking sales in several letters.  Nonetheless, unwilling to

accept Judge Levy's ruling, DAI continued to seek to terminate the Debtors and put them out of

business.

**E.     The Federal District Court Proceeding**

63.     On July 8, 2008, notwithstanding Judge Levy's February 26, 2008 Order to maintain the status quo pending final decision of that Court on the arbitration clauses, DAI filed an action in the Federal District Court against Desai and the Operating Companies for trademark infringement, false advertising, and dilution under the Lanham Act, and related claims under state law.  (Case captioned Doctor's Associates, Inc. v. Jesal Desai a/k/a Jesal A. Patwari, Shapat, Inc., Shapat II, LLC, Shapat III, LLC, and Patwari, LLC, civil case no. 08-3363 (WJM).)

64.     Also on July 8, 2008, DAI filed an Order to Show Cause in the District Court, seeking a preliminary injunction enjoining Desai and the Operating companies from "using or infringing Plaintiff Doctor's Associate's trademarks ('the SUBWAY® Marks') . . . passing themselves off as operating an authorized Subway® restaurant, at any location whatsoever . . . and diluting the SUBWAY® Marks under the Lanham Act and New Jersey State Law."

65.     DAI represented in its brief to the Federal Court, that "Doctor's Associate, Inc., in the present application before the Court for injunctive relief, is (1) not seeking termination of Defendant's Franchise Agreement . . . Doctor's Associates merely seeks an injunction against Defendants for their wrongful use of the Subway trademark under the Lanham Act 15 U.S.C. §1501.." (DAI Reply Brief, at page 3; emphasis added.)

66.     DAI knew that enjoining Desai and the Operating Companies from using the SUBWAY® Marks and from passing off themselves as operating authorized SUBWAY® restaurant would effectively shut down the Debtors' ability to operate the franchises.

67.     On August 12, 2008, over the vigorous objection of Desai and the Operating Companies, the District Court entered the Preliminary Injunction sought by DAI.  The Order preliminarily enjoined Desai and the Operating Companies from "using or infringing, in any

15

manner, the federally registered SUBWAY® Trademarks," "using or infringing any trademark

or signs, menus and any other materials used in connection with operating a SUBWAY®

franchise," and "passing off themselves as operating authorized SUBWAY® restaurant."

68.    Desai's motions to the District Court for reconsideration and stay pending appeal

were denied.

69.    On August 18, 2008, Desai and the Operating Companies filed a Notice of Appeal

with the United States Court of Appeals, Third Circuit, appealing the preliminary injunction and

the denials of the motions for reconsideration and stay.  Desai also filed an emergency motion

with the Third Circuit for a stay of the injunction, which emergency motion was denied.

70.    A chaotic situation now exists.  The Debtors are enjoined by the District Court

from operating the four Subway sandwich restaurants which are the primary asset of the

bankruptcy estate at the same time that DAI is enjoined by the Superior Court from interfering

with the Debtors' business operations.

71.    Furthermore, the subleases prohibit the Debtors from using the premises for any

purpose other than as a Subway store.  Thus the Debtors cannot operate another business at these

locations.

72.    On or about August 12, 2008, DAI, its employees and/or its agents instructed

defendant Reinhart Food Service to stop supplying food and other products to the Debtors' four

Subway sandwich restaurants.  Reinhart has refused to take the Debtors orders for food and

supplies, and cancelled a delivery scheduled of August 15, 2008.

73.    On or about August 19, 2008, 2008, DAI, its employees and/or its agents froze the

Debtors' Merchant Services Account so that customers cannot make credit card purchases at the

four Subway sandwich restaurants.

74.    On August 26, 2008, DAI filed a motion for contempt of court against the Debtors

seeking enforcement of the preliminary injunction.

75.    Subsequent to the filing of the petitions herein on August 27, 2008, DAI, its

employees and agents have continued to harass the Debtors and interfere with its business

operations in violation of Judge Levy's Order, and despite demands by the Debtors to honor the

automatic stay.

## COUNT I
### (Violation of 11 U.S.C. §362(a)(1))

76.    Debtors hereby repeat each allegation of this Complaint as if set forth herein.

77.    DAI have filed a lawsuit in the United States District Court captioned Doctor's

Associates, Inc. v. Jesal Desai a/k/a Jesal A. Patwari, Shapat, Inc., Shapat II, LLC, Shapat III,

LLC, and Patwari, LLC, civil case no. 08-3363 (WJM) seeking, *inter alia* compensatory

damages, treble damages, disgorgement of profits, costs, attorneys fees, and other monetary

awards, final injunctive relief on its trademark infringement and other claims that would prevent

Debtors from operating as Subway restaurant franchisees, and other relief.

78.    DAI has filed a motion for contempt seeking to enforce the preliminary injunction

entered against the Debtors in that action.

79.    DAI and Subway Real Estate Corp. have filed a counterclaim in the New Jersey

Superior Court, Essex County, Chancery Division, in the case captioned Jesal Desai, Shapat,

Inc., Shapat 2, LLC, Shapat 3, LLC, and Patwari, LLC v. Doctors Associates, Inc. and Subway

Real Estate Corp., docket no. ESX-C-314-07, seeking judgment *inter alia* terminating the four

franchise agreements, permanently enjoining the Desai from operating a sandwich shop for (1)

year within a radius of three (3) miles of any existing Subway franchise, permanently enjoining

Desai from using DAI's trademarks, confirming arbitration awards, awarding Subway Real

17

Estate judgment of possession of the business premises, compensatory damages, punitive

damages, costs, attorneys fees, and other relief.

      80.     DAI and Subway Real Estate Corp. removed the state court action to the Federal

District Court.

      81.     Subway Real Estate Corp. previously filed eviction actions in the Superior Court

of New Jersey, Hudson County and Essex County, seeking to evict the Debtors from the business

premises occupied by the Debtors in Montclair, Guttenberg, and Bloomfield, New Jersey.

      82.     Continued prosecution of the legal proceedings described above after the filing of

the petitions are a violation of the automatic stay provisions of s362(a)(1).

      83.     Invoking the automatic stay to enjoin the Defendants' efforts is consistent with

Judge Levy's Order that the status quo be maintained pending further proceedings in the chapter

11 cases.


      WHEREFORE, Debtors pray for judgment in favor of Debtors and against DAI and

SREC as follows:

A.     Declaring that the Debtors have legal and equitable interests in the Franchise

        Agreements and Leases as of the commencement of the bankruptcy case with

        such interests constituting "property of the estate" under 11 USC 541;

B.     Declaring that the automatic bankruptcy stay provisions of 11 USC 362 are in full

        force and effect and that the Defendants are directed to abide by same;

C.     Enforcing 11 USC 362(a)(1) by enjoining DAI & SREC from taking any further

        action to commence or continue any judicial, administrative, or other action or

proceedings against the Debtors or to recover a claim against the Debtors that

arose before the commencement of this case; and

D.      Such further relief as the Court deems just, proper and equitable.

## COUNT II
### (Violation of 11 U.S.C. § 362(a)(2))

84.      Debtors hereby repeat each allegation of this Complaint as if set forth herein.

85.      As of the Petition Date, the Debtors have legal and equitable interest in the

Franchise Agreements and Leases, which constitute "property of the estate" as defined by 11

U.S.C. §541.

86.      Without having obtained a modification of the automatic stay from this Court,

DAI and SREC are continuing efforts to enforce orders against the Debtors in an effort to

terminate the Franchise Agreements and Leases.

87.      The continued efforts of DAI and SREC to terminate the Debtors' businesses

pursuant to orders of the District Court are in violation of 11 U.S.C. §362(a)(2).

88.      Invoking the automatic stay to enjoin the Defendants' efforts is consistent with

Judge Levy's Order that the status quo be maintained pending further proceedings in the chapter

11 cases.

WHEREFORE, Debtors pray for judgment in favor of Debtors and against DAI and

SREC as follows:

A.      Declaring that the Debtors have legal and equitable interests in the Franchise

Agreements and Leases as of the commencement of the bankruptcy case, which

constitute "property of the estate" under 11 USC 541;

B.      Declaring that the automatic stay provisions of 11 USC 362(a)(2) are in full force

and effect and that the Defendants are directed to abide by same;

19

C.  Enforcing 11 USC 362(a)(2) by enjoining DAI & SREC from taking any further

action to enforce the orders of the District Court; and

D.  Such further relief as the Court deems just, proper and equitable.

## COUNT III
### (Violation of 11 U.S.C. §362(a)(3))

89.  Debtors hereby repeat each allegation of this Complaint as if set forth herein.

90.  As of the Petition Date, the Debtors have legal and equitable interest in the

Franchise Agreements which constitute "property of the estate" as defined by 11 U.S.C. §541.

91.  As of the Petition Date, the Debtors have legal and equitable interest in the

Franchise Agreements and Leases as defined by 11 U.S.C. §541.

92.  Without having obtained a modification of the automatic stay from this Court,

DAI and SREC is continuing efforts to exercise control over property of the bankruptcy estate by

threatening the Debtors' suppliers with adverse action in the event said suppliers provide product

to Debtors.

93.  The continued efforts of DAI and SREC to interfere with the Debtors' businesses

and unduly influence the Debtors' suppliers are in violation of 11 U.S.C. §362(a)(3).

94.  Invoking the automatic stay to enjoin the Defendants' efforts is consistent with

Judge Levy's Order that the status quo be maintained pending further proceedings in the chapter

11 cases.

WHEREFORE, Debtors pray for judgment in favor of Debtors and against DAI and

SREC as follows:

A.  Declaring that the Debtors have legal and equitable interests in the Franchise

Agreements and Leases as of the commencement of the bankruptcy case, which

constitute "property of the estate" under 11 USC 541;

20

B.      Declaring that the automatic stay provisions of 11 USC 362(a)(3) are in full force

and effect and that the Defendants are directed to abide by same;

C.      Enforcing 11 USC 362(a)(3) by enjoining DAI & SREC from taking any further

action to enforce the orders of the District Court; and

D.      Such further relief as the Court deems just, proper and equitable.

## COUNT IV
### (Enjoining DAI's Enforcement of Preliminary Injunction
### 11 USC 362; 11 USC 105)

95.      Debtors hereby repeat each allegation of this Complaint as if set forth herein.

96.      The Court is authorized pursuant to 11 U.S.C. §105(a) to enjoin litigation against

non-debtor third parties where:

A.      There is a likelihood that the moving party will suffer irreparable injury if the

injunction is not granted;

B.      The movant has a reasonable probability of success on the merits;

C.      The balance of the hardships to the respective parties weighs in favor of

injunctive relief; and

D.      The issuance of the injunction is in the public interest.

97.      The Debtors successful reorganization requires that Desai and the Operating

companies be permitted to continue to operate their four Subway sandwich restaurants, which are

the most valuable asset of the estate;

98.      The Debtors will be substantially and irreparably harmed unless DAI is enjoined

from enforcing the August 12, 2008 Preliminary Injunction against them.

99.      If DAI is not enjoined from enforcing the August 12, 2008 Preliminary Injunction

then the four Subway stores will have to close down and all the employees let go.

100.    A stay of the Preliminary Injunction will facilitate a smoother and swifter reorganization process and is consistent with Judge Levy's Order that the status quo be maintained pending further proceedings.

101.    DAI will not be damaged from a delaying enforcement of the preliminary injunction.  To the contrary, if the stores are closed down then Desai cannot pay DAI royalty fees;

102.    The public interest in New Jersey favors the protection of franchisees, and the public interest also favors avoiding firing the employees of the Subway stores at issue.  Also, successful financial reorganizations under Chapter 11 of the Bankruptcy Code are to be encouraged.

WHEREFORE, Debtors pray for judgment in favor of Debtors and against DAI and SREC as follows:

A.    Under 11 USC 362 and/or 11 USC 105, enjoining and restraining Defendants DAI and Subway Real Estate Corp. from taking any action to enforce the Preliminary Injunction until (a) the Debtors have confirmed a plan of reorganization, or (b) further Order of the Court; and

B.    Granting Plaintiff-Debtors such other and further relief as the Court deems just and proper under the circumstances.

### COUNT V
**(Declaratory Judgment Allowing Debtors to
Continue to Operate as Subway Franchisees including
Use of Subway Trademarks)**

103.    Debtors repeat each allegation of this Complaint as if set forth herein.

104.    The Debtors successful reorganization requires that Desai and the Operating companies be permitted to continue to operate their four Subway sandwich restaurants, which are the most valuable asset of the estate;

WHEREFORE, Debtors pray for judgment in favor of Debtors and against DAI and SREC as follows:

A.    Declaring that Debtors are permitted to use Subway trade marks, service marks, and tradenames and to use the Subway system and Operations Manual as set forth in the Franchise Agreements, and are permitted to hold themselves out as operating an authorized Subway restaurant, and to enjoy all other rights of Subway Franchisees including as enumerated in the Franchise Agreements, until (a) the Debtors have confirmed a plan of reorganization, or (b) further Order of the Court; and

B.    Granting Plaintiff-Debtors such other and further relief as the Court deems just and proper under the circumstances.

## COUNT VI
**(Enjoining DAI from Ceasing to Supply Goods and Services to Debtors' Stores and Enjoining DAI for Interfering with the Supply of Goods and Services to Debtor's Stores by Third Parties; 11 USC 362; 11 USC 105)**

105.    The Debtors repeat each allegation of this Complaint as if set forth herein.

106.    Defendant DAI has refused to supply the Debtors with supplies and services necessary for them to operate.

107.    Defendant DAI, and its agents and employees, have instructed vendors to cease selling and/or delivering food and other supplies to the Debtors' four Subway sandwich restaurants.

23

108.    Defendant DAI, and its agents and employees, have instructed other Subway sandwich store owners not to sell or give any goods or supplies to the Debtors Subway sandwich restaurants.

109.    The Debtors cannot operate their four Subway sandwich restaurants unless they receive the supplies necessary to operate.

110.    Defendant DAI's actions are in violation of Judge Levy's Order that the status quo be maintained pending further proceedings.

WHEREFORE, Debtors pray for judgment in favor of Debtors and against DAI and SREC as follows:

A.      Under 11 USC 362 and/or 11 USC 105, enjoining and restraining Defendants DAI and Subway Real Estate Corp., and their agents and employees, from taking any action to interfere or restrict the delivery of any goods, services, or supplies to the Plaintiff Debtors and their four Subway sandwich stores until (a) the Debtors have confirmed a plan of reorganization, or (b) further Order of the Court; and

B.      Granting Plaintiff-Debtors such other and further relief as the Court deems just and proper under the circumstances.

**COUNT VII**
**(Enjoining Reinhart Food Service from Refusing or Failing**
**to Supply Goods and Services to Debtor's Stores;**
**11 USC 362; 11 USC 105)**

111.    The Debtors repeat each allegation of this Complaint as if set forth herein.

112.    The Debtors primary food and goods supplier, Reinhart Food Services, is the sole authorized supplier of food products and other products to the Subway stores in the Debtors' region.

113.    Reinhart refuses to take orders or to sell food and other supplies to the Debtors' stores.

114.    Upon information and belief, Reinhart was instructed by DAI, its agents and/or employees, to cease supplying the Debtors.

115.    The Debtors cannot operate their four Subway sandwich restaurants unless they receive the supplies necessary to operate.

WHEREFORE, Debtors pray for judgment in favor of Debtors and against Reinhart Food Services as follows:

A.    Under 11 USC 362 and/or 11 USC 105, enjoining and restraining Defendant Reinhart Food Services from refusing to accept orders from Plaintiff-Debtors, and enjoining and restraining Defendant Reinhart Food Services from failing to deliver, or delaying the delivery of, food and other supplies ordered by the Debtors to their four Subway sandwich stores until (a) the Debtors have confirmed a plan of reorganization, or (b) further Order of the Court; and

B.    Granting Plaintiff-Debtors such other and further relief as the Court deems just and proper under the circumstances.

## COUNT VIII
### (Enjoining DAI and Subway Real Estate Corp. from Evicting the Debtors from the Business Premises 11 USC 362; 11 USC 105)

116.    DAI's affiliate, Subway Real Estate Corp., is the master tenant and plaintiff-debtors are the subtenants at the business premises occupied by Desai's Subway stores.

117.    The sublease provides that the sublease is terminated if the franchise agreement is terminated.

118.   Subway Real Estate Corp. filed four holdover eviction proceedings against Plaintiffs-Debtors, seeking to evict them from the business premises occupied by Desai's subway stores, on the pretext that the franchises were terminated.

119.   DAI and Subway Real Estate Corporation, by way of Counterclaim in the State Court Action, have demanded judgment of possession of the business premises.

120.   The Debtors successful reorganization requires that Desai and the Operating companies be permitted to continue to operate their four Subway sandwich restaurants, which are the most valuable asset of the estate;

WHEREFORE, Plaintiff-Debtors demand judgment against DAI and Subway Real Estate Corp. as follows:

A.   Under 11 USC 362 and/or 11 USC 105 enjoining and restraining Defendants DAI and Subway Real Estate Corp., and their agents and employees, from taking any action to evict, dispossess, or remove the Plaintiffs-Debtors from the business premises on the grounds that the franchise agreements were terminated until (a) the Debtors have confirmed a plan of reorganization, or (b) further Order of the Court; and

B.   Granting Plaintiff-Debtors such other and further relief as the Court deems just and proper under the circumstances.

## COUNT IX
### (Wrongful Termination Under The
### New Jersey Franchise Practices Act, N.J.S.A. 56:10-5)

121.   Plaintiffs repeat each allegation of this Complaint as if set forth herein.

122.   Plaintiff-debtor Desai and defendant DAI entered into four separate Franchise Agreements, dated June 27, 2002, November 20, 2002, May 3, 2006, and May 18, 2006 for the

26

licensing and operation of four separate Subway restaurant franchises at specific locations, all in the State of New Jersey.

123.    The Franchise Agreements and the relationship between Desai and DAI constitute a franchise relationship as set forth in the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1 et seq. ("NJFPA").

124.    The NJFPA prohibits a franchisor from directly or indirectly terminating a franchisee without "good cause."  Good cause is limited by the NJFPA to "failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." N.J.S.A. 56:10-5.

125.    Debtors have substantially complied with the requirements of the franchise.

126.    DAI does not have good cause under the NJFPA to terminate Desai's franchise, yet served notices purporting to terminate the Debtors' four franchises, and has attempted to effectuate such termination without good cause in violation of the NJFPA.

127.    DAI represented to the District Court, in its briefs on the preliminary injunction, that DAI was not seeking termination of Desai's Franchise Agreement as part of that application, but only to enjoin Debtors use of Subway trademarks.

128.    The NJFPA defines a franchise to mean "a written arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise." N.J.S.A. 56:10-3(a).

129.    The franchise agreements expressly granted Desai license to use the Subway trademarks, trade names, service marks, and related insignia and logos, and to use the Subway

27

"system" to operate Subway restaurants, and to operate and promote her restaurants under the name Subway.

130.     DAI knew that enjoining Desai and the Operating Companies from using the SUBWAY® Marks and from passing off themselves as operating authorized SUBWAY® restaurant would effectively shut down the Debtors' franchises.

131.     By obtaining the preliminary injunction, DAI is attempting an indirect termination of Desai's franchises, as well as a direct termination, in violation of the NJFPA.

132.     By directing Reinhart to cease delivering food and other necessary supplies to the Debtors, DAI is further attempting an indirect termination of the Debtors' franchises, in violation of the NJFPA.

133.     By having the Debtors' merchant services accounts frozen so that the Debtor cannot accept credit cards, DAI is further attempting an indirect termination of the Debtors' franchises, in violation of the NJFPA.

WHEREFORE, Debtors pray for judgment in favor of Debtors and against DAI and SREC as follows:

A.     An injunction restraining and enjoining DAI from terminating Desai's franchise agreements;

B.     An injunction requiring DAI to provide Desai all benefits and rights as set forth in the Franchise Agreements;

C.     Compensatory, consequential, and punitive damages;

D.     Costs of the action including but not limited to reasonable attorneys fees pursuant to the New Jersey Franchise Practices Act, N.J.S.A. 56:10-10;

E.     Pre and Post Judgment Interest;

F.      Such other relief as the Court deems just and proper.

## COUNT X
**(Imposition of Unreasonable Standards of Performance
in Violation of the New Jersey Franchise Practices Act, N.J.S.A. 56:10-7)**

134.    Plaintiffs repeat each allegation of this Complaint as if set forth herein.

135.    It is a violation of the NJFPA for a franchisor to impose unreasonable standards of performance upon the franchisee.

136.    DAI's affiliate, Subway Real Estate Corp., is the tenant and Debtors are the subtenants at the business premises occupied by the Debtors' Subway stores.

137.    DAI and Subway Real Estate Corp. had final site selection approval and negotiated the leases with the landlords of the respective properties.

138.    DAI and Subway Real Estate Corp. negotiated rents that are much more than the market rate for the properties.

139.    The subject premises require certain repairs to be made, including leaks and other defects, which repairs are under the sole control of the landlords and Subway Real Estate Corp.

140.    Subway Real Estate Corp. has failed or refused to compel the landlords to make the necessary repairs.  However, DAI has used the very same defects and issues against the Debtors, cited the Debtors for violations, and attempted to use these purported violations and notices as a basis for termination.

141.    DAI has imposed unreasonable standards of performance upon the Debtors.

WHEREFORE, Debtors pray for judgment in favor of Debtors and against DAI and SREC as follows:

A.      An injunction restraining and enjoining DAI from terminating Desai's franchise agreements;

29

B.      An injunction requiring DAI to provide Desai all benefits and rights as set forth in

the Franchise Agreements;

C.      Compensatory, consequential, and punitive damages;

D.      Costs of the action including but not limited to reasonable attorneys fees pursuant

to the New Jersey Franchise Practices Act, N.J.S.A. 56:10-10;

E.      Pre and Post Judgment Interest;

F.      Such other relief as the Court deems just and proper.


NORRIS, McLAUGHLIN & MARCUS, PA
Proposed Attorneys for Debtors/Debtors-in-Possession


By: /s/ Gary N. Marks
      GARY N. MARKS

Dated: September 8, 2008

## VERIFICATION

Jesal Patwari, also known as Jesal Desai, of full age, hereby certifies as follows:

1.     I make this verification on behalf of myself, individually, and in my capacity as a principal of Shapat, Inc., Patwari, LLC, Shapat II, LLC and  Shapat III, LLC.

2.     I have reviewed the foregoing Verified Complaint.

3.     The statements of fact therein are true and correct to the best of my personal knowledge and belief.

4.     I understand that if any of the foregoing statements made by me are found to be willfully false, that I am subject to punishment.

 

 

                                             _____
                                             JESAL PATWARI

DATED: September 8, 2008