

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br>JESAL PATWARI<br><br>Debtor | Chapter 11<br>Case Nos: 08-26178 (NLW) |

---

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER TO HOLD THE LANDLORD IN CONTEMPT FOR WILLFUL VIOLATION OF AUTOMATIC STAY; TO COMPEL LANDLORD TO TURN OVER THE ESTATE ASSETS TO THE DEBTOR; AND TO AWARD THE DEBTOR (1) ATTORNEY FEES, (2) ACTUAL DAMAGES AND (3) PUNITIVE DAMAGES

---

Submitted By
Jesal Patwari
1032 Waterford Drive
Edison, New Jersey, 08817
Ph: (732)763-6024
Pro Se

1

## **PRELIMINARY STATEMENT**

Jesal Patwari ("Debtor"), hereby, moves before this court requesting that the Bankruptcy Court holds Rail Link LLC and its owner Cary Heller ("landlord") in contempt for willful violation of the automatic stay, pursuant to 11 U.S.C. §362(k). The landlord violated the automatic stay by:

a) Withholding the Bankruptcy Estate Assets ("Estate Assets") in a coercive and illicit manner.

b) Filing a fraudulent complaint against the Debtor in the local municipal court, unscrupulously claiming one of his employees to be the owner of the Estate Assets; the landlord intended to sell the estate to another Subway Franchisee without the Debtor's consent.

c) Threatening Debtor over the phone to cause disruption in the reorganization process of all other Debtor leases—by provoking other landlords against the Debtor.

The Debtor seeks an order from the court for safe turnover of the Estate Assets and relief in the form of attorney fees, actual damages and punitive damages.

## STATEMENT OF FACTS

The Debtor incorporates herein, by reference, her certification, filed simultaneously herewith. **The exhibits referenced in this brief are attached to the Debtor's certification.**

Sometime in November 2002, Subway Real Estate Corporation ("SREC") signed a commercial lease with the landlord, for the space located at 49 Claremont Avenue, Montclair, New Jersey, 07042. For the same location, the Debtor signed a sublease with SREC to operate it as Subway Restaurant, sometime in January 2003. The leased space was a plain vanilla box and the Debtor spent approximately $175,000 for leasehold improvements and installation of Subway equipment in the space.

On or about August 27, 2008, Debtor filed Chapter 11 petition for reorganization under the U.S. Bankruptcy code. Pursuant to the filing, an order of Automatic Stay issued by this court came into effect—as of the same day. See **(Exhibit A)**. Sometime in October 2008, the landlord moved for relief before this court to lift the automatic stay, purporting to commence eviction proceedings against the Debtor in the Essex County Landlord Tenant court ("State Court"). On or about November 03, 2008, Hon. Judge Winfield lifted the automatic stay granting relief to the landlord to pursue the State Court action[1]. See **(Exhibit B)**.

---

[1] The automatic stay was lifted only to the extent that the landlord can commence the eviction proceedings in the state court.

3

Pursuant to this relief, the landlord filed an eviction complaint against the primary lessee—SREC. No notice was sent by the landlord or SREC to the Debtor/sublessee. A hearing was scheduled on November 19, 2008 in the State Court before Hon. Judge Ned Rosenberg. SREC, with an intention of being evicted, did not appear at the hearing. Nevertheless, to protect its rights—as a sublessee—the Debtor appeared, represented by her Counsel Ms. Susheela Verma. The landlord was represented by his counsel Mr. Scott Arons. It was mutually agreed between the two parties that a default would be entered against SREC, and the Debtor would vacate the premises by December 03, 2008. In furtherance of this, the judge granted extra time—until December 03, 2008—so the Debtor can have enough time to vacate the premises and safely remove the Estate Assets and personal belongings.

It was put on the court record by Ms. Verma that pending the "Warrant of Removal", the landlord would only be allowed access to the space for utility and sanitation purposes. See (transcript pg: 3 Line: 21-25 and pg: 5 Line 1-23). Furthermore, it was also agreed that while accessing the space, landlord would not take possession of any of the Debtor's Estate Assets. See (**Exhibit C**: transcript pg: 8, Line: 4-10).

The Judge's Order for the "Warrant of Removal" actually went into effect—as of December 10, 2008 — seven days after the previously agreed date. See (**Exhibit D**).

On or about November 28, 2008 — prior to Court Order effectuation — as a prudent effort to safeguard the Estate Assets; the Debtor engaged a Moving and Storage Company to secure the equipment— an inherent element of the Estate Assets and

4

crucial to Debtor's reorganization. In the midst of the moving, the landlord called the police; took possession of the space; changed the locks and filed a fraudulent complaint against the Debtor—falsely claiming one of his employees, Mr. Chris Fuentes as the Estate Assets' owner. See (**Exhibit E**). The complaint alleges that the Debtor stole the equipment, which in fact, was financed by the Debtor herself, before 5 years. See (**Exhibit F**). As if these egregious acts weren't enough, the landlord went further by calling the Debtor and leaving a derogatory message threatening her to cause disruption in the reorganization process of all other Debtor leases by provoking other landlords against the Debtor. This message is available as a voice recording and the Debtor would produce it, if necessary.

Since January 2009, the Debtor's corporate bankruptcy counsel, Mr. Robert Schmidt—who represents the Debtor's Corporation which also is under Chapter 11 Bankruptcy Protection —has made several good faith efforts to contact landlord's counsel, requesting to turn over the Estate Assets. The Estate Assets not only comprises of valuable equipment, but also five years of Debtor's accounting information and personal belongings. As an effort to salvage Debtor's Corporate Estate Assets, Mr. Schmidt sent a letter addressing this concern to the landlord's counsel—Mr. Scott Arons— sometime in February, 2009. See (**Exhibit G**). In response, Mr. Arons called Mr. Schmidt and rebuffed as to relinquishing the estate, reasoning that the space was already leased to another Subway Franchisee. Further, he also stated that the equipment now belongs to the new Subway Franchisee and hence, won't be returned.

# LEGAL ARGUMENTS

## POINT 1

## THE LANDLORD SHOULD BE HELD IN CONTEMPT FOR WILLFUL VIOLATION OF AUTOMATIC STAY, PURSUANT TO §362(k)

### A. The Automatic Stay

Section 362 provides for an automatic stay upon the filing of a bankruptcy petition under any Chapter 11 of the Bankruptcy code. Section 362 stays a wide range of actions that would affect or interfere with property of the estate. The stay is effective automatically and immediately upon the filing of the bankruptcy petition. Formal service of process is not required, and no particular notice need be given in order to subject a party to the stay[2].

Section § 362(a) provides, in pertinent part, an automatic stay, applicable to all entities, of

1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the Debtor that arose before the commencement of the case under this title;

3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

---

[2] See Job v. Calder (In re Calder), 907 F.2d 953(10th Cir. 1990); Smith v. First Am. Bank, N.A. (In re Calder), 876 F.2d 524 (6th Cir. 1989).

6

4) any act to create, perfect, or enforce against property of the Debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title

The landlord has received all creditor notices, since the Debtor filed for Bankruptcy. The landlord could not have moved for relief in the Bankruptcy Court, without knowledge of the Automatic Stay. It is also uncontroverted that Hon. Judge's Winfield Order—lifting the automatic stay—was only construed to permit the landlord for commencing eviction proceedings in the State Court. Hence, it is axiomatic that the landlord was well aware of the existence of Automatic Stay.

### B. Willful Violations of the Automatic Stay

Code § 362(k) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, inappropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).

Thus, in order for damages to be awarded pursuant to Code § 362(k), the Debtor must establish the following:

(1) The actions taken by landlord were in violation of the automatic stay;

(2) The violation was willful; and

(3) The violation caused actual damages[3].

The landlord's coercive possession of the Estate Assets; changing the locks and verbally abusing the Debtor are clear violations of the automatic stay, which satisfies the first factor. Furthermore, the landlord has already leased the space to another

---

[3] *In re Glanzer*, Case No. 07-17109, 2008 WL 938590, at *2 (Bankr. N.D. Ohio April 2, 2008) (citations omitted)

7

Subway Franchisee and has denied relinquishing the Estate Assets. As argued earlier; landlord was well aware of the automatic stay. In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate[4]. Hence, the violation of the stay was willful which satisfies the second factor.

Landlord's filing of a fraudulent complaint in the Municipal Court against the Debtor, has forced the Debtor to hire another counsel and burdened her with unnecessary attorney fees. The equipments were bought by the Debtor and installed as part of the leasehold improvements. Apparently from landlord counsel's implication; it is quite likely that the equipment has already been sold to a new Subway Franchisee without permission of the Court or the Debtor. This has impaired the reorganization process of the Debtor and has caused actual damages. Accordingly, all the three factors are satisfied to seek damages pursuant to 362(k).

---

[4] See Homer Nat'l Bank v. Namie, 96 B.R. 652, 654 (W.D. La. 1989)

## POINT 2

**THE DEBTOR SHOULD BE AWARDED PUNITIVE DAMAGES DUE TO THE EMOTIONAL DISTRESS CAUSED BY LANDLORD'S EGREGIOUS ACTIONS, PURSUANT TO §362(k)**

The majority of courts have held that emotional distress damages may be recovered in an award of actual damages under § 362(k)(1)[5].

The landlord's egregious acts have caused great emotional distress to the Debtor and her family. Filing a fraudulent Municipal complaint by falsely claiming one of his employees as the owner of Estate Assets; changing locks to the store before the eviction; not sending any notices of eviction as required by New Jersey Landlord Tenant Law; coercive possession of Debtor's equipment, accounting information and personal belongings; ridiculing the Debtor by using derogatory language over the phone; threatening to cripple the Debtor and impairing her reorganization process by colluding with Debtor's other landlords; and to top it all, contemplating sale of the Estate Assets to a new Subway franchisee without knowledge of the Debtor or the Court—are outrageous acts reflecting moral turpitude.

It is well settled that courts have awarded punitive damages to the Debtor where mental distress and emotional trauma were caused due to creditor's willful actions. In Fleet v. Kaneb, the Court held (*"Emotional distress is an actual injury . . . . Legitimate human emotions are brought to bear when one's rights are trampled on."*).

---

[5] Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265 (1st Cir.1999);
In re Dawson, 390 F.3d 1139, 1148 (9th Cir. 2004)

9

## CONCLUSION

For the aforementioned reasons, the Debtor respectfully asks the court to hold the landlord in contempt by awarding attorney fees, actual and punitive damages and ordering the landlord to turn over the Estate Assets to the Debtor.

Respectfully Submitted,

March 23, 2009

*Jesal Patwari*
Jesal Patwari(Debtor/Pro Se)